# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DELOITTE TAX LLP, | ) | CASE NO. 1:20-cv-2487 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINON AND |
| | ) | ORDER |
| AUSTIN MURRAY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff Deloitte Tax LLP ("Deloitte") to amend the complaint, *instanter*, and to set new case management deadlines. (Doc. No. 24 (Motion).) Defendant Austin Murray ("Murray") opposes the motion (Doc. No. 27 (Memorandum in Opposition)), and Deloitte has filed a reply. (Doc. No. 31 (Reply).) For the reasons that follow, Deloitte's motion is granted.

## I.   GOVERNING LEGAL STANDARDS

A party may amend its pleading once as a matter of course within twenty-one days after serving it or within twenty-one days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id*.; *see also Morse v. McWhorter*, 290 F.3d 795, 799–800 (6th Cir. 2002) ("Generally, leave to amend is 'freely given when justice so requires.'") (quoting *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341,

1348 (6th Cir. 1993)). "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co*., 830 F.2d 68, 69 (6th Cir. 1987). However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014).

When, as here, the deadline for amending pleadings established by the court's scheduling order has passed, the Sixth Circuit has made clear that, "a plaintiff must first show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper under Rule 15(a).'" *Commerce Benefits Grp., Inc. v. McKesson Corp*., 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (alterations added by Sixth Circuit)). "Consequently, the Court is permitted to examine the standard factors governing amendments of the complaints under Rule 15(a) only if it is satisfied that the date for the filing of a motion for leave to amend is properly extended under the good cause provisions of Rule 16(b)." *Craig-Wood v. Time Warner N.Y. Cable LLC*, No. 2:10-cv-906, 2011 WL 4829687, at *2 (S.D. Ohio Oct. 6, 2011).

To demonstrate good cause under Rule 16(b), a plaintiff must show that the original deadline could not have been met despite due diligence, and that the opposing party will not suffer prejudice by the amendment. *Leary*, 349 F.3d at 909 (citation omitted); *see Inge v. Rock*

2

*Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (noting that "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification") (quotation marks and citations omitted); *see also* 3 *Moore's Federal Practice* ¶ 16.14(1)(a) (3d ed. 2014) (identifying as factors for consideration in the "good cause" analysis: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure the prejudice).

Rule 16(b) also governs the extension of dates and deadlines in a court's scheduling order. "Rule 16 permits district courts to amend the pretrial scheduling order provided that the movant demonstrates 'good cause.'" *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 478 (6th Cir. 2014). A party demonstrates sufficient good cause to alter the discovery deadlines established by the Court when it shows that, despite its diligence, the established deadline could not be met. *See id*. District courts enjoy wide latitude in "manag[ing] the discovery process and control[ling] their dockets." *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)).

## II. DISCUSSION

### A. Procedural Background and Positions of the Parties

On November 3, 2020, Deloitte filed the present action asserting claims of breach of contract, breach of loyalty under Ohio common law, misappropriation of trade secrets, and false advertising under the Lanham Act, 15 U.S.C. § 1125, against Murray. (Doc. No. 1 (Complaint).) The complaint alleges that Murray, while he was still employed by Deloitte, founded a

3

competing business, Prophit.ai, Inc. ("Prophit.ai"), and developed intellectual property "that purports to perform the very same reverse audit analyses as Deloitte[.]" (*Id*. ¶ 1.) Upon its filing, the case was randomly assigned to Senior District Court Judge Christopher A. Boyko.

On November 24, 2020, Attorneys Jeffrey S. Dunlap and Sara S. Dorland, of the law firm of Ulmer & Berne LLP, entered an appearance on behalf of Murray, and requested an extension of time in which to answer or otherwise respond to the complaint. (Doc. No. 4 (Notice); Doc. No. 5 (Motion for Extension).) Judge Boyko granted the extension, and Murray, by and through his counsel, filed an answer on January 4, 2021. (Non-document Order, 12/8/2020; Doc. No. 6 (Answer).)

On February 9, 2021, Judge Boyko set this matter for a telephonic case management conference ("CMC") to be held on March 17, 2021. (Doc. No. 7 (Notice of CMC).) By non-document order, the CMC was continued until March 24, 2021. (Non-document Order, 3/10/2021.) The Minutes of Proceedings from the March 24, 2021 CMC reflect that Judge Boyko set the following dates and deadlines: April 30, 2021 as the deadline for amending pleadings and adding parties, June 30, 2021 for the end of fact of discovery, and July 20, 2021 for a settlement conference. (Non-document Minutes of Proceedings, 3/24/2021.)

On June 10, 2021, the parties filed a joint motion to extend all deadlines in the case. (Doc. No. 10.) In support of the motion, the parties represented that they "have been diligently engaged in settlement discussions, including the informal exchange of documents and information, but require additional time to reach agreement. The parties believe that the potential for amicably settling this matter will be increased if the parties *do not have to simultaneously engage in costly discovery*." (*Id*. at 1 (emphasis added).) The parties requested a thirty (30) day

4

extension of the fact discovery deadline and asked that the settlement conference be continued. (*Id*.) The Court granted the motion, setting July 30, 2021 as the new cut-off for fact discovery, and rescheduling the settlement conference for August 18, 2021. (Non-document Order, 6/10/2021.)

On July 29, 2021—the day before the new deadline for completing fact discovery—the parties filed a joint motion to extend all deadlines in the case by one hundred-twenty (120) days. (Doc. No. 11.) The parties explained that they had been in the process of arranging for an inspection of Murray's competing computer platform to confirm information provided by Murray, but were having difficulty arranging for the inspection. (*Id*. at 1–2.) They represented that they were "hopeful that the inspection will allow the parties to reach a mutually agreeable settlement but, in light of the material already produced by [Murray], *[Deloitte] believes that additional discovery is necessary should it appear that the parties are not able to reach a settlement*, including potential non-party discovery and depositions from [Murray's] new company, which is not a party to the case." (*Id*. at 2 (emphasis added).) The parties also represented that they believed that rescheduling the settlement conference to a date after any newly set discovery cut-off "could help the parties reach settlement and conserve party and judicial resources." (*Id*.) According to the parties, "[g]iven that the parties' joint, primary goal since filing has been to attempt to resolve their dispute, good  cause exist[ed] for a further extension that will give the parties an opportunity to attempt to settle[] . . . and, if settlement is not possible following those efforts, *to conduct limited additional discovery* to move the case along to trial." (*Id*. (emphasis added).)

On August 2, 2021, Judge Boyko granted, in part, the parties' motion to extend the

deadlines. Judge Boyko's non-document order provided:

> The Settlement Conference scheduled for August 18, 2021 is continued to September 20, 2021 at 2:00 p.m. . . . Fact discovery may continue. *The Court will consider extending the discovery deadline until November 29, 2021* only if the case does not resolve at the September Settlement Conference.

(Non-document Order, 8/2/2021 (emphasis added).)

On September 15, 2021, Deloitte filed an emergency motion to excuse the personal appearance of its company representative at the settlement conference or to continue the settlement conference, citing the dangers associated with travel during the COVID-19 pandemic. (Doc. No. 12 at 1–2.) Murray, through counsel, opposed the motion. (Doc. No. 13.) On September 16, 2021, the Court canceled the settlement conference and denied the emergency motion as moot. In so ruling, Judge Boyko explained that, having reviewed the parties' position papers submitted in advance of the settlement conference, he had determined that there were "significant obstacles to a meaningful settlement dialogue." (Doc. No. 14 at 1.) The Court instructed the parties to file a joint proposed schedule with new dates for "going forward." (*Id.* at 2.) Judge Boyko cautioned that "**no** discovery extensions and/or amendments adding parties or claims (now that those deadlines have expired) will be considered absent motions supported by affidavits." (*Id.* (emphasis in original).)

On September 30, 2021, defense counsel sought permission to withdraw from the case, citing the fact Murray did not have the resources to continue to pay his attorneys. (Doc. No. 15-1 (Brief in Support) at 1; *see* Doc. No. 15 (Motion to Withdraw).) Judge Boyko afforded Murray thirty (30) days in which to obtain new counsel or elect to proceed pro se. (Doc. No. 16.) In the interim, on October 4, 2021, Deloitte moved for leave to amend, *instanter*. (Doc. No. 18.) The motion mirrors the motion to amend presently before the Court and was accompanied by

affidavits and other materials that appear to comply with Judge Boyko's instructions regarding such motions. (*See* Doc. No. 14.) On October 6, 2021, Judge Boyko denied the motion to amend "subject to re-filing once Defendant Murray has elected whether to retain new counsel or to proceed pro se." (Non-document Order, 10/6/2021.)

On October 27, 2021, Murray notified the Court of his intention to proceed pro se. (Doc. No. 19 (Notice).) The following day (October 28, 2021), Judge Boyko returned the case to the Clerk for reassignment. (Doc. No. 20.)  After the undersigned was assigned to the case, the Court granted Murray permission to file electronically and set the matter for a new CMC. (Doc. No. 21 (Order Regarding Electronic Filing); Doc. No. 22 (CMC Scheduling Order).) At the request of Murray, the Court converted the CMC, originally scheduled for December 17, 2021, to a telephonic status conference and reset it for November 30, 2021. (Non-document Order, 11/12/2021.) On November 19, 2021, Deloitte refiled its motion to amend and motion to set new dates and deadlines. The Court discussed the pending motion at the November 30, 2021 status conference, and, at the conclusion of which, the Court advised the participants that a written ruling would be forthcoming, "after which it will set dates and deadlines that will govern the remainder of this case." (Non-document Minutes of Proceedings, 11/30/2021.)

### *Deloitte's Position*

By way of amendment, Deloitte seeks to add a second defendant— Prophit.ai—as well as new claims against Murray and Prophit.ai for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and tortious interference. Deloitte also intends to add a separate claim against Prophit.ai for unjust enrichment. (*See* Doc. No. 24-2 (Proposed First Amended Complaint).) In support, Deloitte offers the declaration of lead counsel, Gregory Mersol, who avers that defense

counsel represented from the outset of the litigation that Murray was without the resources to engage in protracted litigation and that he was interested in any early resolution. (Doc. No. 24-1 (Declaration of Gregory V. Mersol) ¶ 5.) Attorney Dunlap also represented that Prophit.ai was having serious financial problems and ultimately advised Deloitte that the company was "no longer a going concern[.]" (*Id.* ¶¶ 5, 9.) Mersol insists that news that Prohibit.ai was defunct was "critical" to its strategy going forward with respect to settlement because it meant that Murray would "no longer be using the intellectual property in dispute[,]" even if neither Murray or Prohit.ai had the resources to satisfy any type of monetary settlement. (*Id.* ¶ 10.) According to Deloitte, it was not until September 2021, when Murray balked at Deloitte's settlement demand that included a requirement that Prophit.ai wind down its affairs, that Deloitte began to suspect that Murray had no intention of ceasing Prophit.ai's operations. (*Id.* ¶ 23.) Moreover, despite being the Chief Executive Officer of Prophit.ai, Murray claimed that he was not able to negotiate on behalf of Prophit.ai and this fact, coupled with the apparent continuing viability of Prophit.ai, rendered any possible settlement impossible. (*Id.*)

Mersol maintains that Deloitte "diligently sought information from Murray to enable a settlement, but held off on the most expensive forms of discovery in light of [Murray's] claims that Prophit.ai was either defunct or soon would be and that [Murray's] financial resources were extremely limited." (*Id.* ¶ 24.) It was not until Deloitte learned the truth about Phophit.ai and Murray's intentions, and shortly before defense counsel withdrew, that it became apparent that it would need to conduct more extensive discovery and join Prophit.ai as a party to this litigation. (*Id.* ¶ 26.)

*Murray's Position*

Murray offers a competing account of the events leading up to the filing of the present motion to amend. In his affidavit, Murray explains that by January 2020, Prophit.ai had run out of money and Murray's own resources were scarce, rendering Murray "highly motivated" to settle the case. His approach was "to be honest and forthcoming" with Deloitte in order to "accelerate a resolution." (Doc. No. 27-1 (Affidavit of Austin Murray) ¶ 12.) He was disappointed that initial efforts did not resolve the litigation but continued to work toward settlement while also allocating his limited resources to the defense of the action. (*Id*. ¶ 13.) Toward that end, he elected to forego his own discovery so that he could reserve his resources for summary judgment and trial. And when the deadline for adding new claims and parties had passed, and he was no longer worried about defending against additional claims, he reallocated some of his litigation resources to covering his cost of living expenses. (*Id*. ¶ 17.)

Murray concedes that he "reluctantly" agreed to several extensions of the discovery deadline "in the belief that providing Deloitte[] what they requested would demonstrate to them that he was not improperly using their intellectual property." (*Id*. ¶ 20.) He insists that "[h]ad he known that Deloitte would so belatedly move the Court" to amend, he would never have consented to the extensions. (*Id*.) Without elaboration, he maintains that he rejected Deloitte's settlement demand, and made a counter-offer, because Deloitte's demand letter "contained demands that are impossible for [Murray] to do." (*Id*. ¶ 21.)

According to Murray, if anyone failed to negotiate in good faith it was Deloitte, who misled Murray and Prophit.ai into believing that it was willing to engage in a code review that would show that Prophit.ai was not using Deloitte's intellectual property. (*Id*. ¶ 9.) He also insist

that counsel for Deloitte "deliberately misconstrued truthful representations made by Mr. Murray and his attorney about the financial difficulties that Prophit.ai was experiencing to wrongfully mean that Prophit.ai 'was no longer a going concern' and that Prophit.ai was 'closing.'" (Doc. No. 27 at 11.) Had Deloitte exercised due diligence, Murray believes it would have discovered the facts upon which to base their motion to amend prior to the April 30, 2021 deadline. (*Id.* at 8.) Instead, Murray posits that Deloitte disregarded clear signals throughout the summer of 2021 that Prophit.ai was still operational and should not now be rewarded by having its untimely motion granted.

## B.      Existence of Good Cause (Rule 16(b))

Deloitte argues that good cause exists to amend beyond the deadline because of Murray's misleading and dilatory discovery tactics that lead Deloitte to pursue a settlement and forego discovery that it would have otherwise sought that would have alerted it to the truth about Prophit.ai sooner.  (Doc. No. 24 at 5–6.) Of course, the Court is severely disadvantaged in its ability to rule on this and other arguments raised by the parties, given that it did not preside over any of the events that form the basis for the parties' briefing. And its task is further hindered by the fact that both sides rely on hearsay representations made by former defense counsel, from whom neither side has produced an affidavit. Fortunately, the Court need not parse the dueling affidavits in a vain search for a modicum of truth—nor otherwise prematurely resolve credibility issues that are better left (if necessary) for a factfinder at a later date—because at least two things are clear from the objective record.

First, because of Murray's limited resources and Prophit.ai's financial struggles, the parties were jointly interested in early resolution. For several months, the parties engaged in

10

negotiations designed to end the litigation before it became necessary to incur substantial fees and expenses. From their joint motions for extensions, it is clear that the parties intentionally limited discovery to that which was necessary to amicably resolve the matter. Second, it is equally clear that the parties and the presiding judge understood that amendment and additional discovery might be necessary if the case did not settle. Judge Boyko specifically left room for the possibility that discovery might be extended until the end of November 2021 and further provided for the filing of motions to amend should the case not settle. The timing of the present motion to amend is the result of the breakdown of settlement negotiations—for whatever reason—and not a tactical decision or carelessness on the part of Deloitte.

In view of the foregoing, good cause exists to excuse Deloitte's delay in seeking to amend the complaint. *See, e.g., Johnson v. Fundex Games, Ltd.*, No. 1:08-cv-1660, 2010 WL 935484, at *2 (S.D. Ind. Mar. 10, 2010) (permitting amendment past the deadline where the "parties agreed not to litigate the case in the hopes of reaching a settlement"); *Jones v. St. Jude Med. S.C., Inc.*, No. 2:08-cv-1047, 2010 WL 145327, at *2 (S.D. Ohio Jan. 8, 2010) (similar). For the same reasons, good cause exists to extend the deadlines in this case, including the deadline for conducting fact discovery. *See, e.g., Krukowski v. Omicron Techs., Inc.*, No. 10-cv-5282, 2012 WL 3841491, at *1, 4 (N.D. Ill. Aug. 29, 2012) (allowing extension of fact discovery where the "parties agreed that in order to save on expenses, discovery and additional pleadings would be delayed until after the settlement conference").

11

**C.      Justice Requires Leave to Amend (Rule 15(a))**

Although the inquires are conceptually distinct, the reasons found by the Court to constitute good cause under Rule 16(b) also weigh in favor of allowing Deloitte to amend under Rule 15(a). That is, as discussed above, Deloitte did not unduly delay in bringing the present motion to amend. The parties and the Court had previously taken a step back from active litigation to work on resolution, and Deloitte immediately sought leave to amend as soon as it was apparent that settlement was not likely. With respect to the other considerations delineated by the Sixth Circuit, the present motion represents Deloitte's first request to amend and, as such, Deloitte has not repeatedly failed to cure pleading deficiencies by prior amendments allowed. Moreover, Murray has not argued that the proposed amendment is futile.

Murray has argued, however, that he will suffer significant prejudice from any delay in bringing this matter to trial and from any enlargement of the scope of the case. "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) (citation omitted). A party can also demonstrate prejudice by showing he "ha[s] insufficient time to conduct discovery of the [new claim]; that [he] was unfairly surprised by the [new theory]; or that [he] ha[s] insufficient time to conform [his] pleadings to the [new] claim." *United States v. Wood*, 877 F.2d 453, 456–57 (6th Cir. 1989). Here, Murray argues that he is "prejudiced by time." (Doc. No. 27 at 3.) He explains, "[a] trial by jury as soon as possible is the only way [he] can clear his name, restore his ability to earn a living, and end [the] prejudicial

12

limbo" he has found himself in since he was personally named as a defendant in this litigation. (*Id*.) "Having exhausted his savings," he also complains that he "will have to find employment in a field unrelated to indirect tax to pay the costs of representing himself, as well as his daily living expenses." (*Id*.)

While the Court is sympathetic to Murray's predicament, the fact remains that any amendment, regardless of when it is filed, is likely to result in additional litigation cost and expenses. *See In re Varner*, No. 14-51103, 2014 WL 4988236, at *4 (Bankr. N.D. Ohio Oct. 7, 2014) ("Courts do not dismiss [or refuse to permit the filing of] valid legal claims simply because defending against them would be costly and time consuming"); *Verragio, Ltd. v. Signet Jewelers, Ltd*., No. 5:20-cv-1083, 2021 WL 4813279, at *4 (N.D. Ohio May 26, 2021) (noting that courts do not typically find prejudice merely from the additional expense and inconvenience of defending against a new claim) (citing *Carrizo (Utica) LLC v. City of Girard*, 661 F. App'x 364, 368 (6th Cir. 2016)); *see also Dassault Sys., SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2012) (delay and increased costs from having to actually litigate a dispute are not sufficient prejudice). Moreover, while the case has been pending for some time, it comes before any depositions or significant discovery has been taken, thus reducing the likelihood that depositions would need to be retaken or other discovery would have to be revisited.

In fact, it is likely that the amendment will conserve resources as Deloitte has indicated that, if it is not allowed to amend, it may be forced to pursue a separate action against Prophit.ai. (Doc. No. 31 at 6.) Given that Murray is the CEO and part owner of Prophit.ai, and the allegations regarding Murray and Prophit.ai are intertwined, Murray would likely incur additional expenses defending Prophit.ai in a second lawsuit. It is clearly in the interest of

judicial economy and the minimization of litigation costs to dispose of all claims between the parties in one proceeding. *See Ketter v. City of Newark*, No. 04-cv-550, 2006 WL 8442943, at *4 (S.D. Ohio Apr. 28, 2006) (allowing amendment and reopening discovery to avoid the filing of another related lawsuit and further delay in resolving the underlying dispute). The inefficiencies and expense of duplicating efforts in two separate actions weigh strongly in favor of amendment.

Murray also cannot claim surprise as he has been on notice as to the potential involvement of Prophit.ai from the onset of the litigation. Nor can he claim that he will have insufficient time in which to conduct discovery on any new claims as the Court is extending the deadline for fact discovery.

Ultimately, the Court finds that there has not been a sufficient showing of prejudice to warrant denying Deloitte leave to amend.

## III. CONCLUSION

For the foregoing reasons, Deloitte's motion to amend and to extend the case management dates and deadlines is granted. By separate order, the Court will issue an amended case management plan and trial order with dates and deadlines that track the proposed schedule set forth by Deloitte in the parties' most recent joint status report. (*See* Doc. No. 26 at 2.) Additionally, because Murray's motion to quash (Doc. No. 29) and motion for a protective order (Doc. No. 30) are premised solely on the fact that Deloitte's discovery was requested and the

third-party subpoena was served beyond the prior fact discovery deadline of September 20, 2021, the motions are denied as moot. (*See* Doc. No. 29 at 2; Doc. No. 30 at 2.)

**IT IS SO ORDERED**.

Dated: January 4, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

15