**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Deloitte Tax LLP, | ) | CASE NO. 1:20-CV-02487 |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| vs. | ) | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Austin Murray and Prophit.ai, Inc., | ) | |
| Defendants. | ) | **PLAINTIFF DELOITTE TAX LLP'S MOTION TO DISMISS COUNTERCLAIMS OF DEFENDANT PROPHIT.AI, INC.** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Deloitte Tax LLP ("Deloitte Tax"), through its undersigned counsel, respectfully moves this Court to dismiss the Counterclaims of Defendant Prophit.ai, Inc. ("Prophit.ai") for failure to state a claim upon which relief can be granted for three independent reasons. First, because the term sheets on which Prophit.ai relies are not legally binding contracts to invest, Counterclaims One and Three fail as a matter of law. Second, the alleged statements upon which all four of Prophit.ai's Counterclaims are based – *i.e.*, that Deloitte Tax is the true owner of the Prophit.ai platform – are simply assertions of Deloitte Tax's legal and business interests made in connection with this dispute, and are therefore privileged and cannot form the basis for a tortious interference claim. Third, though ostensibly plead as claims for tortious interference with contract and tortious interference with business relationships, all four of Prophit.ai's Counterclaims are solely based on allegedly defamatory statements made by Deloitte Tax and are, therefore, subject to a one year statute of limitations. That one year period expired no later than November 2021, at least two months prior to the filing of Prophit.ai's Counterclaims.

For all these reasons and for those set forth in the attached Memorandum in Support, Deloitte Tax respectfully requests that Prophit.ai's Counterclaims be dismissed in their entirety.

Respectfully submitted,

*/s/Christina J. Moser*

Gregory V. Mersol (0030838)
Christina J. Moser (0074817)
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
gmersol@bakerlaw.com
cmoser@bakerlaw.com

*Attorneys for Plaintiff Deloitte Tax LLP*

## MEMORANDUM IN SUPPORT

In November 2020, Deloitte Tax filed this action against its former employee Austin Murray ("Murray"), alleging that, while still employed by – and owing a duty of loyalty to – Deloitte Tax, Murray secretly created a start-up company to compete with his employer and misappropriated confidential and proprietary information from Deloitte Tax related to its innovative "CogTax" software tool. (*See* Compl., ECF No. 1.) Defendant Prophit.ai, Inc. is that competing start-up company. (*See, e.g.,* Compl. ¶¶ 12, 41-42; Am. Compl., ECF No. 37, ¶¶ 3, 14, 48, 50-51; Prophit.ai Ans., ECF No. 42, ¶ 179.) When Deloitte Tax learned that, inconsistent with Murray's prior representations, Prophit.ai continues to advertise, sell and use the Prophit.ai platform as a competing indirect tax software tool, Deloitte Tax sought leave to add Prophit.ai as a defendant in this action. (*See* Motion to Amend Compl., ECF No. 18.)

Leave was granted, and Deloitte Tax filed an Amended Complaint against Murray and Prophit.ai on January 5, 2022. (*See* Am. Compl., ECF No. 37.) In the Amended Complaint, Deloitte Tax alleges that the Prophit.ai platform is "the fruit of Murray's breach of his contract with and duty of loyalty to Deloitte Tax" and its continued use by Murray and Prophit.ai constitutes trade secret misappropriation. (Am. Compl. ¶¶ 3-4.)

In response, Prophit.ai filed four Counterclaims against Deloitte Tax for tortious interference with contract (Counterclaims One and Three) and tortious interference with a business relationship (Counterclaims Two and Four). (Prophit.ai Ans. ¶¶ 178-210.) Deloitte Tax now seeks dismissal of these Counterclaims because they fail as a matter of law due to the absence of a legally binding contract to invest, the privileged nature of Deloitte Tax's alleged statements and the applicable statute of limitations.

### I. Prophit.ai's Allegations

Prophit.ai alleges that the venture capital firm Impression Ventures "expressed interest" in

making an investment in Prophit.ai, and, on June 22, 2020, entered into a so-called "investment Term Sheet" with Prophit.ai. (Prophit.ai Ans. ¶¶ 186-187.) According to Prophit.ai, in conversations with Impression Ventures, "Deloitte Partner Rob Galaski"[1] misrepresented that Deloitte Tax was "the true owner of the software used by Prophit.ai." (Prophit.ai Ans. ¶¶ 189-190.)

Prophit.ai alleges that this misrepresentation was first made on September 2, 2020, and that Deloitte Tax personnel had additional subsequent communications with Impression Ventures in which they "made material misrepresentations about the ownership of Prophit.ai's software platform, the nature of Defendant Austin Murray's employment with Deloitte Tax, and the like." (Prophit.ai Ans. ¶ 197.) Prophit.ai claims that, as a result of these alleged misrepresentations, Impression Ventures breached the Term Sheet and abandoned its business relationship with Prophit.ai. (Prophit.ai Ans. ¶¶ 191-192, 198.)

Prophit.ai makes nearly identical allegations against Deloitte Tax with regard to another venture capital firm, Point72 Ventures. After the Impression Ventures deal fell through, Prophit.ai entered into another investment "Term Sheet" with Point72 Ventures on October 9, 2020. (Prophit.ai Ans. ¶¶ 200-201.) Prophit.ai claims that Deloitte Tax made "material misrepresentations regarding the ownership of Prophit.ai's software" to Point72 Ventures, which allegedly resulted in Point72 Ventures "breaching" the Term Sheet and ending its business relationship with Prophit.ai. (Prophit.ai Ans. ¶¶ 202, 209.)

## II. Governing Legal Standards

This motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of

[1] Prophit.ai does not allege that Rob Galaski is a Partner in or representative of Deloitte Tax LLP, the Plaintiff in this matter, nor could it.. Rather, Mr. Galaski is an employee of Deloitte (Canada) LLP, which is the Canadian member firm of Deloitte Touche Tohmatsu Limited, a network of member firms, each of which is a legally separate and independent entity. This is another basis for dismissing at least Counterclaims One and Two.

Prophit.ai's Counterclaims. The notice pleading requirements of Fed. R. Civ. P. 8(a)(2) provide that those Counterclaims must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard is liberal, Rule 8 still requires a Prophit.ai's Counterclaims to provide Deloitte Tax with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also N. Canton Bd. of Educ. v. AT&T Inc.*, No. 5:16-CV-1420, 2017 WL 4430251, at *1 (N.D. Ohio Oct. 5, 2017) (dismissing tortious interference claim); *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-2134, 2016 WL 5390412, at *3 (N.D. Ohio Sept. 27, 2016) (same); *Wamen v. Goodyear Tire & Rubber Co.*, No. 5:13-CV-1084, 2014 WL 185901, at *2–3 (N.D. Ohio Jan. 15, 2014), aff'd, 580 F. App'x 457 (6th Cir. 2014) (same); *Dabrowski v. City of Twinsburg*, No. 5:14--CV569, 2014 WL 5824786, at *1 (N.D. Ohio Nov. 10, 2014) (same).

The factual allegations set forth in the Counterclaims "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citing authorities). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 307 (N.D. Ohio 2021) (dismissing tortious interference claim). Moreover, the truth of any well-pleaded factual allegations must be assumed, but this Court need not "accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, this Court typically may not consider matters outside of the pleadings w. *Frazzitta v. Cheryl L.*

*Venarge Tr. U/A/D June 5, 1995*, No. 5:16-CV-746, 2017 WL 1078963, at *3 (N.D. Ohio Mar. 22, 2017). There are a number of exceptions to this rule, however. In ruling on a motion to dismiss under Rule 12(b)(6), this Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Frazzitta v. Cheryl L. Venarge Tr. U/A/D June 5, 1995*, No. 5:16-CV-746, 2017 WL 1078963, at *3 (citing cases).[2]

Thus, the alleged agreements that form the basis for Prophit.ai's tortious interference with contract claims may be considered without converting the present motion to dismiss into one for summary judgment. *Bailey v. Hartford Life & Accident Ins. Co.*, No. 5:15CV406, 2016 WL 760431, at *2 (N.D. Ohio Feb. 26, 2016) ("In entertaining a Rule 12(b)(6) motion, the Court may consider documents that are referred to in the pleadings and are integral to the claims. . ."); *Askew v. True Hearts of Care, LLC*, No. 5:19-CV-1619, 2020 WL 71012, at *1 (N.D. Ohio Jan. 7, 2020) (considering exhibits attached to counterclaim on Motion for Judgment on the Pleadings) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (in ruling on a motion under Rule 12, a court "may consider the [pleadings] and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [pleadings] and are central to the claims contained therein.")).

All four of Prophit.ai's Counterclaims rest on Deloitte Tax's alleged tortious interference

[2] Here, Deloitte Tax seeks to dismiss Prophit.ai's Counterclaims rather than a Complaint, and the same principles apply. *See, e.g.*, *DiPaolo v. Princeton Search, LLC*, No. 1:13 CV 2185, 2014 WL 517476, at *2 (N.D. Ohio Feb. 6, 2014) (considering agreement referenced in counterclaim for breach of contract and granting motion to dismiss); *Walgreen Co. v. Hummer*, No. 1:10CV2902, 2012 WL 1658680, at *1 (N.D. Ohio May 11, 2012) (same).

with Prophit.ai's relationships with potential investors by way of "material misrepresentations" made to those potential investors. Under Ohio law, a claim for tortious interference with a contract requires proof of the following elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) a lack of justification; and (5) resulting damages. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995)). The elements of a claim of tortious interference with a business relationship are nearly identical to those for tortious interference with contract. "The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012).

## III. Prophit.ai's Counterclaims One and Three for Tortious Interference with a Contract Fail as a Matter of Law Because No Actual Contract to Invest Is Alleged.

For Counterclaims One and Three, this first element of a tortious interference with contract claim – the existence of a contract – is essential. Under *Kenty*, "it must first be shown that a contract exists in order to proceed on a claim for tortious interference with a contract." *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 133 Ohio App. 3d 844, 851, 729 N.E.2d 1259, 1264 (1999); *see also Elements of tortious interference—Necessity of contract*, Baldwin's Oh. Prac. Tort L. § 46:22 (2d ed.).

A contract is defined as "as promise, or set of promises, actionable upon breach." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002-Ohio-2985, 770 N.E.2d 58 (2002). As a general rule, however, agreements in principle and preliminary negotiations that refer to the expectation that a subsequent, formal agreement will be forthcoming are not binding. *Padula v. Wagner*, 2015-Ohio-2374, ¶¶ 18-

19, 37 N.E.3d 799 (9th Dist.) (term sheet indicating intent to sell outstanding stock to employee was not binding contract). Under well-established Ohio law, courts will not find that a contract exists where the parties "do not intend the terms of an agreement to bind them until the agreement is formalized in a written document that both parties sign." *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151, 375 N.E.2d 410 (1978); *see also* 17 Ohio Jur.3d Contracts § 14 ("Where an agreement contemplates further action toward formalization or if an obligation to become binding rests on a future agreement to be reached by the parties, so that either party may refuse to agree, there is no contract.").

Prophit.ai's tortious interference with contract claims rely on the alleged breach of two term sheets – one dated June 22, 2020 with Impressions Ventures and a second dated October 9, 2020 with Point72 Ventures. "A term sheet is a nonbinding agreement that shows the basic terms and conditions of an investment." *See* "Term Sheet", Investopedia, available at https://www.investopedia.com/terms/t/termsheet.asp, last accessed February 21, 2022. *See also Padula v. Wagner*, 7th Dist. Summit No. 27509, 2015-Ohio-2374, ¶¶ 18, 19 (dismissing contract claim as a matter of law after concluding that there was no set of facts under which plaintiff could establish that a term sheet was a contract (citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151 (1978)). Here, despite basing its Counterclaims upon the term sheets, Prophit.ai did not attach a copy of either term sheet to its Answer and Counterclaims. Nevertheless, Deloitte Tax obtained a copy of the Point72 Ventures Term Sheet in discovery, and a copy is submitted herewith as Exhibit A.[3] *See Askew*, 2020 WL 71012 (courts may rely upon documents

---

[3] The Point72 Ventures Term Sheet was produced by Austin Murray subject to an informal agreement to treat the document as "outside counsel only." Plaintiff's references herein are to those non-sensitive portions of the document that have already been substantively disclosed by Prophit.ai in its Answer and Counterclaims. Because Defendants have refused to negotiate a protective order in this case that would allow the submission of the exhibit under seal, Deloitte Tax is submitting the document separately, with a Motion to Temporarily Seal pending action by Defendants that would allow the Court to determine

incorporated by reference in pleading in deciding motion to dismiss).

The most likely conclusion is that Prophit.ai did not submit the term sheets because they clearly state on their face that they are not binding contracts. Indeed, the very first paragraph of the Point72 Ventures Term Sheet unequivocally evidences the parties' clear intention ***not*** to be bound:

> Except for the section entitled "*Binding Terms*," this summary of terms ***does not constitute a legally binding obligation***. The parties intend to enter into a legally binding obligation only pursuant to definitive agreements to be negotiated and executed by the parties.

(Ex. A, 10/9/2020 Term Sheet at 1 (emphasis added). The Point72 Ventures Term Sheet is referred to as a "proposal" and contains a number of closing conditions that Prophit.ai has not alleged were ever satisfied. There are no allegations that the Impressions Ventures Term Sheet is a definitive agreement and, indeed, by calling it a "term sheet" – which is defined as non-binding with respect to any future investment – Prophit.ai acknowledges this fact.

Term sheets (in this case regarding potential investments) are not contracts upon which a tortious interference claim may be based. Ohio law is clear "that when a document unambiguously expresses the parties' manifest intent to not be bound by its terms until the agreement is formalized at some future date, a contract does not exist." *Richard A. Berjian, D. O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St. 2d 147, 152, 375 N.E.2d 410 (1978); *Mansfield Square, Ltd. v. Big Lots, Inc.*, 10th Dist. Franklin No. 08AP–387, 2008-Ohio-6422, 2008 WL 5159930, ¶ 19–20 (letters of intent that "clearly and expressly articulated both parties' desire that no promises would be binding unless and until the promises and the terms of a lease agreement were reduced to writing and incorporated into a signed agreement" did not create valid contract); *EquiSolar Int'l, Inc. v. Willard*

whether it is entitled to be sealed. Based on the Court's February 14, 2022 Order (ECF No. 42), the request is first being submitted to the Court via email in accordance with Local Civ. Rule 37.1.

*& Kelsey Solar Grp.*, LLC, No. 3:10 CV 18, 2010 WL 2106207, at *5 (N.D. Ohio May 25, 2010) (term sheet explicitly providing that "parties would enter into a binding agreement in the future" was not binding contract).

Here, by example, the Point72 Ventures Term Sheet plainly states that it is merely an expression of present intentions, and not a binding contract for Point72 Ventures to invest in Prophit.ai. The parties spelled out in clear language that they intended to be bound only by a finalized and signed definitive agreement "to be negotiated and executed" in the future, subject to the satisfaction of the closing conditions – including "[s]atisfactory completion of business and legal due diligence."[4] Ex. A. The unambiguous provisions of this term sheet show that it was not a final, binding investment agreement, but rather a preliminary step in the process of negotiating a final contract. This is entirely consistent with what a "term sheet" is, and cannot form the basis for a tortious interference with contract claim.

Prophit.ai has not alleged that the parties successfully negotiated or signed a final contract with either Impression Ventures or Point72 Ventures. As a result, there is no set of facts under which Prophit.ai can establish that Deloitte Tax improperly interfered with any valid contract to invest, and Deloitte Tax is entitled to dismissal of Counterclaims One and Three.

## IV. All of Prophit.ai's Counterclaims Fail Because It Has Not and Cannot Allege Lack of Justification or Privilege.

Prophit.ai must plead Deloitte Tax lacked justification for any statements it made to Prophit.ai's potential investors or otherwise plead facts to defeat Deloitte Tax's privileged

[4] Prophit.ai cannot reasonably hope to establish causation. Prophit.ai would have been required to disclose Deloitte Tax's cease and desist letters to Austin Murray and Prophit.ai in connection with any legal due diligence. Mr. van Haaren admits in his Declaration in Support of Prophit.ai's Opposition to Deloitte Tax's Motion to Disqualify Austin Murray that "[s]ince Prophit.ai is required to disclose all litigation in due diligence, Prophit.ai cannot secure any investment capital to pay for an attorney." (*See* ECF No. 47-1 at PageID #: 849 at ¶ 13.)

assertion of its legal interests – but it has not and cannot, as a matter of law, do so. Despite the lack of clarity regarding the circumstances under which Deloitte Tax allegedly made the "misrepresentations" pleaded in the Counterclaims, one thing is clear – the alleged "misrepresentations" are nothing more than the statements Deloitte Tax has been making since this dispute arose for the purpose of asserting its legal rights against Murray and Prophit.ai. Prophit.ai admits as much, alleging that at least Counterclaim Four is based on "Deloitte Tax's intentional and groundless initiation of this action." (Prophit.ai Ans. ¶ 208.)

Both the tortious interference with contact and tortious interference with business relationship claims require Prophit.ai to plead that Deloitte Tax acted without justification, *i.e.*, that it lacked a privilege to act and its interference was therefore improper.[5] *See Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir. 1999). However, the Counterclaims are completely silent on this element. *See Stewart v. Hartford Fin. Servs. Grp., Inc.*, No. 2:19-CV-304, 2020 WL 264416, at *6 (S.D. Ohio Jan. 17, 2020) (dismissal for failure to plead conduct was not justified).

Moreover, if a party "has a privilege to interfere, there is no tort." *Definition of interference with business relations*, Baldwin's Oh. Prac. Tort L. § 46:3 (2d ed.). This is "[a] crucial element of the tort." *Inwood Vill., Ltd. v. Christ Hosp.*, 2012-Ohio-3434, ¶ 18 (dismissal of tortious interference with prospective business relationship claim based on hospital's assertion of its own interest in development of land at issue). Ohio law recognizes that a party "is privileged to

[5] While Ohio courts have adopted the Restatement (Second) of Torts (hereafter "Restatement") §¶ 766-68 (1979), in determining whether an actor's interference with a contract was improper or "privileged," Prophit.ai pleads no facts addressing these factors either, namely: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 860 (Ohio 1999)).

purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract." *Smith v. Nat'l W. Life*, 2017-Ohio-4184, ¶¶ 20-21. The underlying conduct identified by Prophit.ai – "material misrepresentations" regarding Deloitte Tax's rights to the Prophit.ai platform and "the nature of Defendant Austin Murray's employment with Deloitte Tax" (Prophit.ai Ans. ¶ 197) – is privileged as a matter of law because those statements concern Deloitte Tax's assertion of its legal interests.

The issue before this Court is similar to *Beruit Traders Co. . Neiman Marcus Group, Inc.*, 2009 WL 3460674 (E.D. Mich. Oct. 22, 2009) (dismissing tortious interference claim). In that case,[6] the defendant, Neiman, objected to the sale of a shipment of rejected bags that had been sold by the shipping company to the plaintiff. *Id*. at *2-*3. The plaintiff's tortious interference claim was based on the defendant's alleged false statements regarding its ownership or proprietary interest in the bags, which had been manufactured for Neiman by a third party and bore the defendant's copyrights, trademarks, and designs. *Id*. at *7. The court held that, owing to Neiman's interest in protecting its intellectual property, the plaintiff had not plead sufficient facts to make its claim of tortious interference plausible. *Id*. at *8. Similarly, here, Deloitte Tax has been asserting its intellectual property rights since February 2020. *See* DE 37 at ¶ ¶ 70-72. The fact that Prophit.ai disagrees with the legal position taken by Deloitte Tax does not defeat Deloitte Tax's right to assert in good faith its legal interests.

Furthermore, to the extent Prophit.ai relies on "Deloitte Tax's intentional and groundless initiation of this action," (Prophit.ai Ans. ¶ 208), Deloitte Tax is privileged to assert its legal claims under the *Noerr-Pennington* doctrine and Ohio's litigation privilege. Although the *Noerr-*

[6] Michigan's tortious interference claims – like Ohio – are based on Restatement Torts, 2d §§ 766B and 767. *See Cook v. Little Caesar Enterprises, Inc.*, 972 F. Supp. 400, 415 (E.D. Mich. 1997).

*Pennington* doctrine is rooted in antitrust law, courts in this Circuit have applied the doctrine to the common law claim of tortious interference. *See, e.g., J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294 (N.D. Ohio 2021) (dismissing tortious interference claim). Moreover, the Sixth Circuit has extended the *Noerr-Pennington* doctrine to anti-competition claims in intellectual property cases, such that trademark or trade secret owners "are protected against anti-competition claims that arise from their use of legal proceedings to enforce their rights." *Restoration Hardware, Inc. v. Bungalow Home*, LLC., No. 2:19-cv-4978, 2020 WL 4436357, at *3 (S.D. Ohio Aug. 3, 2020); *Neway Anchoelok Int'l, Inc. v. Longwood Ind., Inc.*, 107 F. Supp. 2d 810 (W.D. Mich. 1999) (where threat of litigation to protect trade secrets was not objectively baseless, *Noerr–Pennington* doctrine protection applied).

This doctrine protects parties from liability when they use our court system to enforce their rights, and *Noerr-Pennington* immunity extends to pre-litigation threats of suit, demand letters and communications about pending lawsuits, so long as the threatened suit is not a sham. *J.M. Smucker*, 526 F. Supp. 3d at 308. Threatened lawsuits and prelitigation activities "cannot be a sham" so long as there is an "objectively reasonable" basis to litigate. *Id.* (citing *Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*, No. 1:15-cv-737, 2016 WL 3999315, at *4 (S.D. Ohio July 26, 2016)). Prelitigation activity is objectively baseless only where "no reasonable litigant could realistically expect success on the merits." *Restoration Hardware, Inc. v. Bungalow Home*, LLC., No. 2:19-cv-4978, 2020 WL 4436357, at *3 (S.D. Ohio Aug. 3, 2020). Whether a lawsuit or prelitigation activity is objectively baseless is a question of law for this Court that may be decided on a motion to dismiss. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 309 (N.D. Ohio 2021).

In this case, the true ownership of the Prophit.ai platform and Murray's status as an

employee of Deloitte Tax at the time he developed that platform underlie Deloitte Tax's claims. If, as Prophit.ai alleges, Deloitte Tax made statements to Impression Ventures or Point72 Ventures regarding its position on those issue in the weeks leading up to the filing of this federal lawsuit and/or the litigation was the basis for the investors' decision to not pursue a definitive agreement, such statements are privileged under the *Noerr-Pennington* doctrine and Ohio law. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294 (N.D. Ohio 2021) (cease and desist letters enforcing trade dress rights were protected and tortious interference allegations failed to state a plausible claim upon which relief could be granted); *Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918, at *10–11 (N.D. Ohio Mar. 30, 2012) ("Actions taken to protect trademark rights are privileged, and the defendants who take those actions cannot be held liable for them.").

Prophit.ai alleges that Deloitte Tax made misrepresentations to Impression Ventures regarding "the nature of Defendant Austin Murray's employment with Deloitte Tax." (Prophit.ai Ans. ¶ 197). This supposed "misrepresentation" is entirely consistent with the allegations set forth in the Amended Complaint:

> On or about October 7, 2019, Murray informed Deloitte Tax that he was leaving Deloitte Tax. He told his superiors that he was leaving to join a "FinTech" company (a technology company focusing on the financial industry).
>
> Murray's representation as to the reason for his departure was false. He was not leaving Deloitte Tax to join a FinTech company. Rather, unbeknownst to Deloitte Tax, he was already working as the "founder" of a company called Prophit.ai, Inc. ("Prophit.ai"), which (falsely) advertises itself as "the only company offering machine learning software that corrects tax over- and underpayments proactively."
> * * *
>
> As Deloitte Tax later learned. . . Prophit.ai was founded by Murray and some colleagues by the summer of 2019 – while Murray was still employed by Deloitte Tax and during a period when he was directly exposed to highly valuable and proprietary information about Deloitte Tax's CogTax product. During his employment, Murray never disclosed to Deloitte Tax the fact that he and his colleagues founded Prophit.ai and were working on a competing software platform.

(Am. Compl., DE 37, ¶¶ 49-51.) Moreover, Deloitte Tax's alleged misrepresentation regarding its ownership of the Prophit.ai platform (Prophit.ai Ans., DE 42,g ¶¶ 195 & 202), accurately reflects Deloitte Tax's trade secret misappropriation claim in this suit. As stated in the Amended Complaint, "Given the similarity between the Prophit.ai software tool and the CogTax software tool, including the advertised use and purpose of the tools and their potential clients, Deloitte Tax believes and on that basis alleges that Murray and Prophit.ai have used or are imminently in danger of using Deloitte Tax's trade secrets to develop, promote, and/or advance the interests of Prophit.ai (and Murray, personally), to the disadvantage of Deloitte Tax." (¶ 119.) Furthermore, Deloitte Tax has asked for specific enforcement of a contractual provision giving it ownership rights to Murray's intellectual property related to his work for Deloitte Tax. (Am. Compl., Prayer for Relief, ¶A.)

There is certainly no basis upon which this Court can reasonably conclude that Deloitte Tax's lawsuit is a sham. Indeed, it is likely to prevail. The fact that Prophit.ai may disagree on the facts and ultimate merits of Deloitte Tax's misappropriation claim does not render its position objectively baseless. *See J.M. Smucker*, 526 F. Supp. 3d at 309. As a result, Deloitte Tax's alleged interfering statements are nothing more than a reiteration of Deloitte Tax's position in this lawsuit, which it was and is privileged to assert and bring to protect its legal interests. Such statements cannot form the basis for a tortious interference claim, and all of Prophit.ai's Counterclaims therefore should be dismissed as a matter of law.

## V. All of Prophit.ai's Counterclaims Are Barred by the Statute of Limitations.

Prophit.ai alleges that Deloitte Tax first made misrepresentations to Impression Ventures on September 2, 2020, and made similar statements to Point72 Ventures on or about November 1, 2020. (Prophit.ai Ans. ¶¶ 189, 202.) Prophit.ai did not file its Counterclaims against Deloitte Tax until February 1, 2022. Because a one-year statute of limitations applies to all of Prophit.ai's

Counterclaims, they are barred and must be dismissed for this independent reason.

Typically, the statute of limitations for a claim of tortious interference is four years. *See* R.C. 2305.09(D); *Samman v. Nukta*, 8th Dist. Cuyahoga No. 85739, 2005-Ohio-5444, 2005 WL 2593500, ¶ 23. However, where the stated title of a cause of action and its actual basis differ, "the ground of the action and the nature of the demand determine which statute of limitation is applicable." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 173, 297 N.E.2d 113 (1973).

As pleaded by Prophit.ai, its tortious interference claims are based on the alleged misrepresentations made by Deloitte Tax to Prophit.ai's potential investors. In other words, the purported tortious interference is alleged defamation. Ohio and other courts have overwhelmingly found that, if a defamation claim would fail on the statute of limitations, so too must a tortious interference claim based on the same conduct as the defamation claim. *See, e.g., Smith v. Nat'l W. Life*, 2017-Ohio-4184, ¶¶ 11-13, 92 N.E.3d 169 (8th Dist.) (dismissing interference with prospective economic advantage claim); *Evans v. Philadelphia Newspapers, Inc.*, 411 Pa.Super. 244, 249–252, 601 A.2d 330 (1991) ("We conclude that since Appellants' claim for tortious interference is based upon the alleged false and defamatory character of the communication complained of, and it is indistinguishable from the claims of libel and slander, the same one year limitation period should apply to both."); *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 370 (Tex.2014) ("We now similarly conclude that if a tortious interference claim is based solely on defamatory statements, the one-year limitations period for defamation claims applies."); *Eddy's Toyota v. Kmart Corp.*, 945 F.Supp. 220, 226 (D.Kan.1996) ("Courts have also held that an expired claim for defamation cannot form the basis for a tortious interference claim."); *Guelen v. Distinctive Personnel, Inc.*, E.D.N.Y. No. 11–CV–01204, 2011 WL 3420852, 5 (Aug. 4, 2011) ("I conclude that the tortious interference claim is subject to the same one-year limitations period that

attends the defamation claim.").

Defamation is the publication of a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, ***or affecting a person adversely in his or her trade, business or profession***." *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9 (emphasis added). Under Ohio law, this Court "may characterize a claim presented by a plaintiff as one for defamation if the grounds for bringing the action support such a characterization." *Singh v. ABA Publishing Am. Bar Assn.*, 10th Dist. No. 02AP-1125, 2003-Ohio-2314, 2003 WL 21027897, ¶ 25-27. Where a tortious interference claim is nothing more than a "disguised defamation claim," the one-year statute of limitations applies. *Ra v. Ohio Att'y Gen.'s Off.*, 2020-Ohio-1346, ¶ 26, 153 N.E.3d 759, 769.

Ohio has not adopted a continuing publication rule for defamation. As a result, the first alleged publication controls for purposes of the statute of limitations, and all of Prophit.ai's Counterclaims are barred as untimely. *Fleming v. Ohio Atty. Gen.*, 10th Dist. Franklin No. 02AP-240, 2002-Ohio-7352, 2002 WL 31898085, ¶ 14; *Greer v. Natl. City Corp.*, 5th Dist. Delaware No. 08 CAE 12 0076, 2009-Ohio-5172, 2009 WL 3119968, ¶ 51.

## VI. Conclusion

For all these reasons, Deloitte Tax respectfully requests that this Court dismiss Prophit.ai's Counterclaims in their entirety.

Respectfully submitted,

*<u>/s/Christina J. Moser</u>*
Gregory V. Mersol (0030838)
Christina J. Moser (0074817)
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114

Telephone: (216) 621-0200
Facsimile: (216) 696-0740
gmersol@bakerlaw.com
cmoser@bakerlaw.com

*Attorneys for Plaintiff Deloitte Tax LLP*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Motion and Memorandum complies with the page limits set forth in the Northern District of Ohio Local Civil Rules for standard track cases.

Dated: February 22, 2022

By: *[/s/Christina J. Moser]*
Christina J. Moser

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *Plaintiff's Motion to Dismiss Counterclaims of Prophi.ai* was served via the Court's electronic filing system on all parties registered to receive service therefrom.

Dated: February 22, 2022

By: *[/s/Christina J. Moser]*
Christina J. Moser