## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| DELOITTE TAX LLP, | CASE NO. 1:20-CV-02487 |
| Plaintiff, | DISTRICT JUDGE DAVID A. RUIZ |
| vs. |  |
| AUSTIN MURRAY, *et al.*, | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Defendants. | **ORDER** |

Plaintiff Deloitte Tax LLP ("Deloitte Tax") brings this action against *pro se* defendant Austin Murray ("Murray") and defendant Prophit.ai, Inc. ("Prophit.ai") for misappropriation of trade secrets, false advertising, violation of the Defend Trade Secrets Act, and tortious interference, in addition to claims against Murray for breach of contract and breach of loyalty, and against Prophit.ai for unjust enrichment.  (ECF Doc. 37.)  Deloitte Tax alleges that Murray secretly formed a start-up company (Prophit.ai) while employed at Deloitte Tax, and misused Deloitte Tax's confidential and proprietary information to build and market a Prophit.ai software tool that performs the same reverse audit analysis as Deloitte's proprietary CogTax software tool. (*Id.*)  Prophit.ai has filed counterclaims against Deloitte Tax for tortious interference with two separate contracts and business relationships.  (ECF Doc. 42.)

This matter is before the Court to address a dispute regarding the terms of a requested protective order.  Deloitte Tax contends that "Attorneys' Eyes Only" ("AEO") protection is

appropriate and necessary for certain materials, while Defendants assert that they will suffer significant prejudice if Deloitte Tax is permitted to designate materials in a way that would preclude access by *pro se* defendant Murray or Prophit.ai's Chief Technical Officer ("CTO") Rob van Haaren.

For the reasons set forth below, the Court finds that Deloitte Tax has adequately demonstrated that the harm it may suffer if denied AEO protections outweighs the prejudice that will be suffered if *pro se* defendant Murray and CTO van Haaren are precluded from direct access to certain materials.  However, the significant danger of prejudice to Defendants necessitates that: the use of AEO designations be significantly constrained; a new category of AEO production that includes direct access by Murray be clearly defined; and materials designated as AEO be identified in an AEO-log and produced to Murray in redacted form.

As set forth in detail below, the parties are directed to meet and confer on or before May 11, 2022 to agree on terms as specified in this Order, and are directed to submit a joint proposed stipulated protective order for review by the Court on or before May 16, 2022.

## I.     Procedural History

On February 3, 2022, Plaintiff filed a Motion for Protective Order, asking the Court to enter Plaintiff's proposed protective order (ECF Doc. 44-3) to facilitate discovery of confidential, proprietary and/or trade secret information.  (ECF Doc. 44.)   Plaintiff's motion was dismissed without prejudice and the parties were ordered to meet and confer to try to reach an agreed protective order.  (ECF Doc. 46.)

Following the parties' meet and confer efforts and a telephonic status conference with the Court on March 10, 2022, the Court permitted letter briefing regarding Plaintiff's request for a provision allowing materials to be designated AEO.  (ECF Doc. 55.)  This letter briefing was

added to the public docket with the consent of the parties on May 4, 2022.  (ECF Docs. 68 & 69.)

The Court directed further letter briefing on March 29, 2022.  (ECF Doc. 58.)  This letter

briefing also was added to the public docket with the consent of the parties on May 4, 2022.

(ECF Docs. 70, 71, & 72.)  The parties further discussed their respective positions during an

April 19, 2022 telephonic status conference.  (ECF Doc. 66.)

## II.    Law and Analysis

### A.    Arguments of the Parties

This dispute centers on Deloitte Tax's request for entry of a protective order that would

allow parties to designate produced material as "Confidential – Attorneys' Eyes Only" if the

party believes in good faith:

> (i)      that such information qualifies as "Confidential" under the terms of
> this Order;
>
> (ii)     that disclosing such information to persons to whom such
> information otherwise would be disclosed absent such designation may
> cause *significant commercial or competitive injury* to the Party because of
> its *substantial commercial or competitive significance*; and
>
> (iii)    that disclosing such information to anyone representing or working
> for the Receiving Party other than outside counsel *could result in specific
> economic harm, compromise and/or jeopardize the Producing Party's
> competitive position, or provide competitive benefits to the Receiving Party*.

(ECF Doc. 44-3 p. 4 (emphasis added).)  Plaintiff also requests that the order permit designation

of source code as "Restricted Confidential – Source Code," with limitations similar to AEO

designation, but more restrictive in certain ways.  (ECF Doc. 44-3 pp. 13-16.)

Defendants agree that a protective order is needed "to ensure the confidentiality of two

categories of discovery: 1) source code and detailed technical information and 2) sensitive

customer information."  (ECF Doc. 68 p. 1.)  However, they object to AEO restrictions that

would "limit[] discovery to 'outside counsel' only and den[y] Defendants access to information essential to the defense of their case."  (*Id.*)

Prophit.ai argues specifically that it "does not have money on hand to hire expert witnesses or other qualified individuals to aid in the review of the highly technical evidence underlying the claims in this case," and that counsel for Prophit.ai "requires the assistance of his client's employees, Austin Murray and Rob van Haaren" to properly use the evidence in defense of this action.  (*Id.*)  In particular, Prophit.ai reports that "it will be prejudiced by AEO designations that will prevent its counsel from consulting with Rob van Haaren (the Chief Technical Officer of Prophit.ai and the architect of its system) about the technical information that Plaintiff may produce."  (ECF Doc. 71, p. 1.)

For his part, *pro se* defendant Murray asserts that the designation of materials as AEO would have an even more severe impact on him, as he is representing himself and "does not have the financial resources even to hire outside counsel."  (ECF Doc. 68 p. 1.)  He argues that an AEO designation would deprive him of access to the AEO materials "rendering him unable to access evidence essential to the defense of the multitude of claims levied against him personally."  (*Id.*)

Plaintiff asserts that an AEO designation is necessary in this case because "discovery will inevitably involve the exchange of confidential, proprietary, and/or trade secret information" given the nature of Deloitte Tax's claims against Defendants.  (ECF Doc. 44 p. 4.)  For example, Plaintiff asserted the disclosure of three proprietary documents Murray allegedly uploaded without permission (ECF Doc. 37 pp. 17-18 (First Amended Complaint)) could cause "undue harm, primarily in the form of significant competitive disadvantages" if disclosed to Murray, Prophit.ai, or the general public.  (ECF Doc. 44 p. 4.)  Deloitte Tax later noted that AEO

4

materials to which Murray had access during his employment would be classified as "AEO-Murray," and remain available for his review.  (ECF Doc. 70 p. 1.)

In support of its request for relief, Deloitte Tax highlights prior actions by Defendants which are consistent with an AEO designation, including Defendants' prior designation of some Prophit.ai materials as "attorneys' eyes only" and previous refusal to demonstrate the Prophit.ai platform absent a restriction to outside counsel only.  (ECF Doc. 44-1 pp. 1-2 (Mersol Declaration ¶¶ 4-6).)  Plaintiff also notes that Prophit.ai has used the lack of a protective order as a basis for refusing to produce documents in response to discovery requests during the pendency of this dispute.  (ECF Doc. 69 p. 1, Exs. A-B.)

Deloitte Tax initially identified four categories of documents which it anticipates designating as AEO: (1) source code for the CogTax software tool; (2) source code development records for CogTax; (3) internal policies and communications; and (4) financial information relating to development costs for CogTax.  (ECF Doc. 58 p. 2.)  It provided specific argument and supporting evidence in support of an AEO designation for these materials (ECF Doc. 70), but clarified it would not seek AEO designation for "employee policies" or "employee records" (*id.* at p. 4).  Deloitte Tax also proposes the establishment of an "AEO-Murray" designation that would permit Murray to review materials and information "to which he had access while at Deloitte Tax."  (*Id.* at pp. 1, 5.)  Deloitte Tax further indicates it is willing to provide redacted documents for review by Murray.  (*Id*. at p. 5.)

With respect to the identified categories, Murray submitted a response identifying specific areas of inquiry in discovery which he contends would be "impaired or entirely prevented" if his access to Plaintiffs' discovery responses is restricted by an AEO designation. (ECF Doc. 72 pp. 2-5.)  Prophit.ai also submitted a response, indicating that it would be

prejudiced by any AEO designations on the "technical information" in categories 1 and 2 because it "does not have the financial wherewithal to hire outside experts, and its counsel does not have the necessary technical knowledge to understand source code, software design, and the like—that is, the first two of the four categories of information at issue."  (ECF Doc. 71 pp. 1-2.)  In the event that AEO designations are authorized, Prophit.ai requests an exception "to allow Prophit.ai's counsel to consult Rob van Haaren about AEO technical information."  (*Id.* at p. 2.)

In seeking AEO protections, Deloitte Tax contends that the above four categories represent "categories of information for which Deloitte Tax's interests in keeping its trade secrets and sensitive client information out of the hands of its competitor outweigh any purported need of Defendants to access the information."  (ECF Doc. 70 p. 1.)  The Court will address each category separately, keeping in mind the distinct arguments and interests of the two defendants, Murray who seeks to ensure access to discovery materials as a *pro se* defendant, and Prophit.ai which seeks to protect its ability to consult with CTO van Haaren regarding technical information.

**B.     Legal Standard Governing Protective Orders with AEO Designations**

While there is a "strong presumption in favor of openness as to court records," district courts "may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of good cause."  *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (internal quotations, citations, and alterations omitted).  This is because "[d]iscovery concerns the parties' exchange of information that might or might not be relevant to their case," and courts have concluded that "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record."  *Id*. (internal citation and quotations omitted).

Federal Rule 26 provides that: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).  Generally, courts may issue protective orders "for good cause to protect the supplying owner of proprietary information from any competitive harm owing to the use of such proprietary information outside of the litigation in which it was disclosed." *Ross-Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 731 (2013).  In this context, courts have explained that "competitive harm may result" if the party who will have access to "the proprietary information is involved in competitive decision-making." *Id.*

Courts have described AEO designations as "the most restrictive possible protective order." *K & M Int'l, Inc. v. NDY Toy, L.L.C.*, No. 1:13CV771, 2015 WL 520969, at *4 (N.D. Ohio Feb. 9, 2015) (internal citations omitted), *aff'd sub nom. K & M Int'l, Inc. v. NDY Toy, LLC*, No. 1:13CV771, 2015 WL 5813194 (N.D. Ohio Oct. 5, 2015).  Nevertheless, "[c]ourts frequently use 'attorneys' eyes only' protective orders when confidential information is to be provided to a competitor." *Worldwide Distribution, LLLP v. Everlotus Indus. Corp*, No. 1:16 MC 67, 2017 WL 553305, at *3 (N.D. Ohio Feb. 10, 2017) (citing cases); *see also K & M Int'l, Inc.*, 2015 WL 520969, at *4 ("[I]n general, courts uphold AEO designations only 'when especially sensitive information is at issue or the information is to be provided to a competitor.'") (quoting *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at *4 (W.D. Tenn. Mar.27, 2008)); *U.S. ex rel. Daugherty v. Bostwick Lab'ys*, No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013) (same); *Safety Today, Inc. v. Roy*, No. 2:12-CV-510, 2013 WL 1282384, at *5 (S.D. Ohio Mar. 27, 2013) (finding "[a] protective order which

7

designates the information obtained as 'attorneys' eyes only' constitutes a practical and cost-effective way to protect" a producing party's "interest in sensitive information from . . . its competitor" while complying with discovery obligations).

When a party seeks an AEO designation, courts have required them "to describe the alleged harm [they] will suffer from any disclosure with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *K & M Int'l, Inc.*, 2015 WL 520969, at *4 (internal citations and quotations omitted); *Bostwick Lab'ys*, No. 1:08-CV-354, 2013 WL 3270355, at *2 (same).  Courts must then "balance the difficulties imposed upon [a party] against the need to protect information from abuse by competitors." *Id.*

Turning to the four categories of materials identified by Deloitte Tax, the Court will apply this balancing test in weighing Plaintiff's specific showing of potential harm against Defendants' showing of potential prejudice.  This balancing will take into consideration Deloitte Tax's recommendation that certain documents be designated as "AEO-Murray."

**C.     Whether Balancing Test Supports AEO Protections for Categories One and Two: Source Code and Source Code Development Records for the Cogtax Software Tool**

**1.     Plaintiff's Specific and Particular Demonstration of Harm**

Plaintiff asserts that its interest in keeping its CogTax source code and related development records "out of the hands of its competitor" outweighs any need for Defendants to access the information.  (ECF Doc. 70 p. 1.)  In support, it provides evidence of the confidential, specialized, and proprietary nature of these materials.  (*Id.* at pp. 2-4; ECF Doc. 70-3 (Declaration of Deval Reddy ("Reddy Decl.")).)  This evidence demonstrates that CogTax's source code: is the result of thousands of hours of development; includes custom/specialized programing, algorithms, templates, and user interface; and is kept on restricted-access servers with access credentials available only to "those employees engaged in developing and

8

maintaining the tool." (Reddy Decl., ¶¶ 2, 6, 8.)  It demonstrates that the related development records are kept on the same restricted access servers. (*Id.* ¶ 8.)

Plaintiff has also provided evidence that Defendants are competitors in a position to cause competitive harm if given access to the CogTax source code and related development records. (ECF Doc. 70 pp. 3-4.)  Plaintiff shows the Prophit.ai software tool is marketed as providing the same benefits and features of CogTax, while no similar tool was on the market before Prophit.ai.  (Reddy Dec. ¶ 4; ECF Doc. 44-2 (Declaration of Kirsten Gulotta ("Gulotta Decl.")) ¶ 7.)  Plaintiff has also submitted a Prophit.ai Presentation Deck and Executive Summary supporting Plaintiff's characterization of Prophit.ai's services.  (ECF Doc. 70-1; ECF Doc. 70-2.)  Notably, Prophit.ai's Presentation Deck specifically lists "Deloitte" as Prophit.ai's "Competition" in the area of reverse audits, as well as identifying "Accounting Firm Partnership" as a later part of Prophit.ai's market development plan.  (ECF Doc. 70-1 pp. 10, 15 (FV0000073, FV0000078).)

In addition to showing this potential for competitive harm, Plaintiff argues the source code and source code development materials are not relevant to the claims or defenses in this case because there is no allegation that Defendants "had access to or copied directly from the source code" or related technical documentation.  (*Id.* at pp. 2, 4.)  Instead, Plaintiff explains it has alleged that "Defendants incorporated aspects of the CogTax user interface" and "confidential information about features, performance, and future functionality of CogTax" in their Prophit.ai software, all of which are materials that "Murray had access [to] during his employment."  (*Id.*)  For this reason, Plaintiff asserts that "[t]he only aspect of the CogTax platform … that would be relevant to the claims and defenses in this litigation are those aspects of the user interface to which Murray had access while at Deloitte Tax."  (*Id.* p. 3.)

### 2.    Defendants' Showing of Prejudice

In their response briefs, neither defendant contests Deloitte Tax's showing that the relevant materials are proprietary and confidential or its showing that the parties are competitors. Instead, Murray focused on the issues of relevance and prejudice, arguing that he needs access to the source code and related technical evidence for two primary reasons.  First, he "plans to place Deloitte Tax's source code next to Prophit.ai's source code and demonstrate that no misappropriation occurred," thus "disproving Deloitte Tax's alleged similarities."  (ECF Doc. 72 p. 3.)  Second, he argues that the evidence "will conclusively demonstrate that Deloitte Tax has illegally pirated third-party competitor source code and detailed technological evidence" in its CogTax software, "explain[ing] why [he] would never have misappropriated Deloitte Tax property."  (*Id.*)  He contends that he has "specific exculpatory documents with metadata supporting this claim."  (*Id.*)  With respect to the source code development records, he argues similarly that he "intends to demonstrate … that he never had access to nor was involved in the development of CogTax source code or detailed technological information," but also "intends to demonstrate that Deloitte Tax utilizes third-party code, both licensed and pirated, in their CogTax system rather than any self-developed intellectual property or trade secrets."  (*Id.* at pp. 3-4.)

In its own response, Prophit.ai declined to address the issue of relevance, but argued that it would be prejudiced if its counsel were not able to consult with CTO van Haaren, the "architect" of the Prophit.ai system, regarding the technical information in the two categories of information at issue here, since Prophit.ai "does not have the financial wherewithal to hire outside experts."  (ECF Doc. 71 pp. 1-2.)

### 3.      Balancing Under Legal Standard

There is no dispute that "[s]ource codes constitute trade secrets and confidential business information."  *Ohio A. Philip Randolph Inst. v. Householder*, No. 1:18-CV-357, 2019 WL 1002978, at *2 (S.D. Ohio Mar. 2, 2019) (citing *Wisc. Alumni Research Found. v. Apple, Inc.*, No. 14–cv–062, 2015 WL 6453837, at *1 (W.D. Wis. Oct. 26, 2015) ("[a] party's confidential source code falls within a trade secret or confidential business information warranting protection"); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11–CV–01846–LHK, 2012 WL 6115623, at *2 (N.D. Cal. Dec. 10, 2012) ("Confidential source code clearly meets the definition of a trade secret."); *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 499 (S.D.N.Y. 2002) ("Computer programs have been found to constitute a trade secret where the source code is not easily copied or ascertainable by inspection of the program.")).

In this case, it is undisputed that the CogTax source code and development records are proprietary and confidential, and were neither made available to nor reviewed by Defendants.  It is also evident that Defendants have developed a software product that performs similar functions to CogTax and marketed it in apparent competition with Plaintiff.  (*Compare* Reddy Decl. ¶ 3 ("CogTax uses machine learning to identify sales and use tax over-payments and under-payments, saving clients time and money in the reverse audit process…") *with* Executive Summary (ECF Doc. 70-2 p. 2 (FV00000063)) (describing "Prophit.ai's machine learning software" as processing accounts payable to determine "whether line items are taxable or tax exempt" and "mitigate[] the need for future reverse audits"); *see also* Presentation Deck (ECF Doc. 70-1) p. 10.)

In the similar context of a request to review a competitor's software interface, the Sixth Circuit held that the court had "properly balanced the need for [plaintiff] to have access to

11

relevant and necessary information with [defendant]'s interest in preventing a potential competitor from having access to its software" when it limited review of the software to an outside expert in the presence of counsel.  *See R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010).  While the plaintiff had argued "its employees were in the best position to evaluate the software because those employees [we]re also familiar with [plaintiff]'s software," the district court found access by counsel and an outside expert alone would be sufficient to assist the plaintiff in "defining the nature of its … claims while protecting [defendant]'s trade secrets and proprietary information." *Id.* at 269-70.

Likewise, the Court of Federal Claims in *Ross-Hime Designs* found it appropriate for the president of a plaintiff company to be excluded from access to "proprietary information" under an AEO designation because he was "an officer of a competitive corporation" who was "actively involved in pursuing patents" in a business that remained operational.  109 Fed. Cl. at 743; *cf. Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 508-10 (1996) (allowing president of company access to protected material when company was inactive and president had become insurance salesman with no plans to invent other technology related to the industry); *Westbrook*, 2008 WL 839745, at *5 (finding standard protective order rather than AEO protection sufficient when the information sought was not trade secret or proprietary and the parties were not competitors).  The *Ross-Hime Designs* court determined that the company president's involvement in competitive decision-making for the plaintiff created "a greater risk that [he] may inadvertently misuse confidential information as compared to … [a] technical expert who does not stand to gain a competitive advantage from such information." *Id.*

Other courts have reached similar conclusions when the party seeking access to sensitive materials was a business competitor.  *See, e.g., Worldwide Distribution, LLLP*, 2017 WL

12

553305, at *3 (finding good cause to order protective order requiring "that any pricing information be designated attorneys' eyes only" when "the requested discovery contain[ed] confidential information that may cause competitive harm to … a non-party to the underlying action"); *Safety Today, Inc.*, 2013 WL 1282384, at *5 (finding good cause to issue a protective order "limiting the disclosure of information obtained to 'attorneys' eyes only'" when parties were "business competitors" and producing party said the production could provide its competitor with information that might affect its "competitive position in the marketplace").

Additionally, while courts have recognized that complications arise when a party is representing himself, they have nevertheless found AEO designations warranted in cases where the unrepresented party was a competitor.  *See Cherdak v. Koko Fitclub, LLC*, No. CIV.A. 14-10371-IT, 2015 WL 1895992, at *2 (D. Mass. Apr. 27, 2015), *aff'd*, No. 14-CV-10371-IT, 2015 WL 3505259 (D. Mass. June 3, 2015); *Levin v. United States*, 226 Ct.Cl. 701, 704 (1981).  In *Levine*, the court affirmed the lower court's denial of access by a *pro se* plaintiff attorney, explaining that the protective orders did not deny the plaintiff "*use* of the materials, but merely personal perusal by [him] or those associated in practice with him."  226 Ct.Cl. at 705 (emphasis in original).  The court explained further: "The protective orders clearly allow [plaintiff] access to any Confidential Information through counsel not associated with [him]. Thus, if any designated materials are truly as critical to his cause as [he] claims, he may retain counsel to review any designated materials for him."  *Id*.  Similarly, in *Cherdak*, the court found an AEO designation limiting review to outside counsel and experts was appropriate even though the plaintiff was *pro se* and would not have direct access to the materials.  2015 WL 1895992, at *2.

Balancing the interests of all parties to this case, the Court concludes that Deloitte Tax has demonstrated that the inherent risks associated with disclosing its proprietary source code

and source code development materials to Murray and Prophit.ai outweighs the prejudice that

may result from excluding Murray and CTO van Haaren from direct access to these materials.

First, it cannot be ignored that Defendants are not only marketing a competing product

and billing themselves as Plaintiff's competitor, but also stand accused of misappropriating other

proprietary information from Deloitte Tax and using that information to develop the competing

product in question.  These factors support a finding that there is a real danger of competitive

harm if access is not restricted.  *See Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*,

No. CV 16-2499, 2017 WL 9512135, at *3 (E.D. Pa. May 4, 2017) ("The amended complaint

alleges that these individuals and others unlawfully stole trade secret and other business sensitive

information from Brand. These allegations are adequate to establish a reason for not sharing

AEO-designated materials with these individual defendants."), *report and recommendation

adopted sub nom. Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp*., No. CV

16-2499, 2017 WL 2889066 (E.D. Pa. July 7, 2017).

Second, the Court has considered Defendants' assertions that AEO protections will

effectively preclude them from defending this action because neither can afford to hire an outside

expert and Murray cannot afford to hire counsel.  While these assertions are certainly cause for

concern, it is noted that the evidence at present leaves some question as to whether both

Defendants truly lack the ability to hire an expert for the limited purpose of reviewing specific

technical materials and whether Murray lacks the ability to hire counsel even for the limited

purpose of reviewing AEO materials.  (*See* ECF Doc 44-6 (12/6/21 van Haaren Letter) (stating

Prophit.ai has $3,000 in monthly revenue and "all of us" have found other jobs); ECF Doc. 69-3

p. 3 (Murray Interrogatory Responses) (outlining discussions regarding potential funding for

Prophit.ai defense.)  *See also Levine*, 226 Ct.Cl. at 704 ("[I]f any designated materials are truly

as critical to his cause as [he] claims, he may retain counsel to review any designated materials for him."); *Cherdak*, 2015 WL 1895992, *2 ("Obviously, nothing herein prevents plaintiff from retaining the services of an outside attorney to help him prepare his case. … [I]t would be inequitable to allow him to access the highly confidential information belonging to the defendants because he elected to proceed *pro se*.")

Third, the Court has considered Defendants' arguments that an AEO designation will violate their due process rights. (ECF Doc. 68 p. 2.)   Citing to the United States Constitution and a law review article, they argue that "[a] foundational tenet of Procedural Due Process states that defendants have 'the right to know the evidence against [them].'"  (*Id.* (quoting Henry J. Friendly, *"Some Kind of Hearing"*, 123 U. Pa. L. Rev. 1267 (1975)).)  However, Defendants offer no authority to support the proposition that there is a specific due process right to personal access to the discovery materials at issue here.  While the Sixth Circuit has recognized that due process concerns may be implicated by a protective order issued under Federal Rule of Civil Procedure 26(c), it is well established that the "good cause" standard nevertheless governs the analysis.  *See In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 238-40 (6th Cir. 2016) (applying "good cause" standard to uphold issuance of protective order while "[s]ensitive to the procedural-due-process concern" that inmates have a fair opportunity to raise their legal challenge).  Defendants do not dispute that materials may be protected under Rule 26 upon a showing of "good cause."  (ECF Doc. 68 pp. 1-2.)

Finally, the Court has also considered the potential import and relevance of the source code to the present dispute.  While Plaintiff has alleged that Defendants misappropriated certain proprietary materials, all parties agree that Defendants did not have access to Plaintiff's source code or related development materials.  Deloitte Tax states it "has not alleged that Defendants

had access to or copied directly from the source code," (ECF Doc. 70 p. 2), and Murray's stated

purpose in seeking access to the source code and development records is to demonstrate that he

"never had access" and that "no misappropriation occurred."  (ECF Doc. 72 p. 3.)  While Murray

also reportedly seeks access to disprove any alleged similarities between the two competing

software products (*id.*), he has not demonstrated that the benefit of this proposed use outweighs

Deloitte Tax's significant competing interest in protecting its highly confidential and proprietary

information.  The same can be said of Murray's contention that his review of the source code

will enable him to demonstrate that CogTax was constructed using pirated information.  (*Id.* at

pp. 3-4.)  Prophit.ai has made no argument regarding the relevance of the source code and related

materials.  (ECF Doc. 71 p. 1.)

Weighing the above factors, the Court finds Plaintiff has adequately demonstrated that its

need for AEO protections for its source code and related development materials outweighs

Defendants' interest in allowing Murray and van Haaren direct access to those materials.

**D.**  **Whether Balancing Test Supports AEO Protections for Category Three:
Communications and Presentations Containing Sensitive Information**

**1.**  **Plaintiff's Specific and Particular Demonstration of Harm**

In support of its request to designate certain communications and presentations as AEO,

Deloitte Tax notes that it performs tax services for clients to whom it owes duties of

confidentiality.  (Gulotta Decl. ¶ 6.)  It argues that communications and presentations relating to

CogTax may contain trade secrets, confidential information, and protected client information,

and that it could suffer harm if the information were disclosed to the public or its competitors.

(ECF Doc 70 pp. 4-5; Gulotta Decl. ¶¶ 2-3.)[1]

---

[1] Plaintiff states that it will not seek to designate "employee policies" or "employee records" as AEO,
instead designating them as "Confidential" with appropriate redactions.  (ECF Doc. 70 p. 4 n. 4.)  These records will
accordingly not be addressed in this order.

Deloitte Tax also asserts that Murray would have access to many of the AEO designated communications and presentations relevant to this dispute because they are materials he had access to when he was an employee of Deloitte Tax.  (ECF Doc 70 p. 5.)  To better facilitate the provision of these records, Deloitte Tax proposes to establish an "AEO-Murray" designation that captures those AEO records that would still be made available to Murray.  (*Id.* at p. 1.)  The proposal is generally consistent with the proposed protective order, which makes AEO materials available to the author, addressee, or copy recipient of these materials, and to other persons pursuant to a court order or agreement of the parties.  (ECF Doc. 44-3 pp. 7-8, Proposed Protective Order 8(h), (j), (k) & 9(a).)

When asked during the April 19, 2022 telephone conference for a more concrete definition of the materials Plaintiff proposed to make available to Murray under an "AEO-Murray" designation, counsel for Plaintiff generally agreed with the following definition: "Documents and information Murray would reasonably have had access to or been made aware of as a part of his employment at Deloitte Tax."  Counsel indicated this category would include all internal communications regarding the functioning of CogTax during Murray's term of employment.  Counsel also indicated all communications about Murray would be produced under an AEO-Murray designation.

## 2.    Defendants' Showing of Prejudice

With respect to Plaintiff's potential designation of records and communications as AEO, Murray lists several categories of documents he believes to be essential to his defenses, including evidence that: (1) employees were aware CogTax was functioning poorly; (2) Plaintiff knew the CogTax source code had been illegally pirated; (3) Plaintiff knew Murray was leaving to join a fintech startup; (4) Plaintiff knew of Murray's prior work on machine learning software and

involvement with Prophit.ai before he joined Deloitte Tax; (5) Plaintiff never "offered" the

CogTax software in the marketplace; (6) Murray never interfered with any Deloitte Tax

employee's contract; and (7) Plaintiff knew before litigating that Murray never had access to

CogTax source code or detailed technological information.  (ECF Doc. 72 p. 4.)  To the extent

Plaintiff's use of the AEO designation prevents his access to these documents, he contends he

would be deprived of "evidence essential to his defenses."  (*Id.*)

Prophit.ai did not offer any argument as to prejudice it would suffer if this category of

materials was subject to AEO protections.  (ECF Doc. 71.)

### 3.    Balancing Under Legal Standard

As discussed above, AEO designations have been found appropriate for software

interfaces and other proprietary information.  *See, e.g., R.C. Olmstead*, 606 F.3d at 269 (software

interface); *Ross-Hime Designs*, 109 Fed.Cl. at 743 (proprietary information). Courts have also

found AEO designations appropriate for customer and supplier lists.  *See e.g., Nutratech, Inc. v.

Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D. Cal. 2007); N*etquote, Inc. v. Byrd*, No.

CIV.A. 07-CV-00630DM, 2007 WL 2438947, at *4 (D. Colo. Aug. 23, 2007).

Here, Deloitte Tax has indicated it will apply an "AEO-Murray" designation that gives

Murray access to communications and presentations that: (1) would have been reasonably

available to Murray during his employment, including CogTax materials to which he had access;

(2) contain information Murray would reasonably have been aware of during his employment,

including internal communications regarding the functioning of CogTax; or (3) are

communications about Murray.  Deloitte Tax did not waive its right to redact or otherwise

protect information subject to privilege or a duty of confidentiality to other clients.  In comparing

the general descriptions of discovery material Murray described above with the materials that

would be produced under an AEO-Murray designation, it appears that most – if not all – of the desired materials would be available for Murray's direct review.

With respect to changes made to CogTax after Murray left Deloitte Tax, Plaintiff argues it would cause competitive harm to make that information available to Murray, for the reasons already discussed.  (ECF Doc. 70 p. 3; Reddy Dec. ¶ 7.)  Plaintiff also argues it would cause competitive harm to make proprietary CogTax information, like its user interface, available to Prophit.ai CTO van Haaren, as he "has more experience and training in computer science than Murray and could draw deeper lessons from access to the CogTax user interface, thus improving and further optimizing the features and functionality of the Prophit.ai user interface…"  (ECF Doc. 70 p. 3.)  Similarly, it argues that it would suffer competitive harm if CTO van Haaren were given access to trade secrets regarding CogTax or protected client information that have been designated AEO-Murray, given his greater expertise with computer science.  (*Id.* at p. 5.)

Weighing the evidence and arguments of the parties regarding this category of materials and the factors addressed in the prior section, and further considering the scope of materials that will be available for review by Murray under an AEO-Murray designation, the Court finds that Plaintiff has adequately shown its need for AEO protection for communications and presentations that meet the AEO definition in the proposed protective order – i.e., confidential materials that would cause "significant commercial or competitive injury" because of their "significant commercial or competitive significance" and for which the disclosure "could result in specific economic harm, compromise and/or jeopardize the Producing Party's competitive position, or provide competitive benefits to the Receiving Party."  (ECF Doc. 44-3 p. 4.)

However, because the AEO-Murray designation currently remains an undefined concept, the Court directs Deloitte Tax and Murray to meet and confer to agree upon a definition for materials subject to the AEO-Murray designation, as set forth with more specificity below.

In addition, because it is not entirely clear what specific materials will be designated as AEO, and thus not available for review by *pro se* defendant Murray, the Court directs Deloitte Tax and Murray to meet and confer to agree upon a process by which Deloitte Tax will provide to Murray for all AEO designated materials (1) an AEO log as described below and (2) redacted copies of all AEO designated materials, with the exception of source code and source code development materials which cannot reasonably be provided in redacted form.

The AEO log shall include, at minimum: (1) a description of the material or information designated AEO with corresponding Bates number(s); (2) the date, if any, associated with the material or information; and (3) the asserted basis for the AEO designation.  In preparing redacted AEO materials, Plaintiff shall apply the most limited redactions possible and redact only the specific information asserted to be subject to AEO protection under the protective order.

**D.     Whether Balancing Test Supports AEO Protections for Category Four: Financial Information Relating to Development Costs for Cogtax**

**1.     Plaintiff's Specific and Particular Demonstration of Harm**

Deloitte Tax argues finally that AEO designation is needed to protect materials showing the costs of developing CogTax, including invoices from outside consultants and internal emails, presentations, and spreadsheets.  (ECF Doc. 70 p. 5; Reddy Decl. ¶ 9.)  In addition to pricing, it reports these documents may contain confidential information regarding unrelated Deloitte Tax projects, business plans, and strategic investments, as well as information regarding developing CogTax functionality or features.  (*Id.*)  Pointing again to Prophit.ai's Presentation Deck and Executive Summary, Deloitte Tax argues Defendants could use confidential pricing information

to pitch their own clients or price their own services.  (*Id.* (citing Executive Summary (ECF Doc. p. 3) (FV00000064)) & Presentation Deck (ECF Doc. p. 8) (FV00000071)).)  Plaintiff acknowledges that some documents in this category would be subject to an "AEO-Murray" designation, and notes that it is also willing to provide redacted copies of AEO documents to Murray.  (ECF Doc. 70 p. 5.)

> ### 2.      Defendants' Showing of Prejudice

Neither Murray nor Prophit.ai have specifically addressed this category of production in their briefing, beyond the general objection that any AEO designation would restrict their access to materials that may be necessary to their defense of this action.   (ECF Doc. 71; ECF Doc. 72.)

> ### 3.      Balancing Under Legal Standard

 In *Bostwick Lab'ys*, the court found "confidential pricing information" was properly subject to AEO protection when sought by a direct competitor in the same industry.  2013 WL 3270355, at *6.  As to Plaintiff's concern that documents concerning pricing may also contain confidential information regarding specific customers, other projects, or the development of the CogTax software, the Court has already discussed the cases that support AEO designations for such materials.  *See, e.g., R.C. Olmstead*, 606 F.3d at 269; *Ross-Hime Designs*, 109 Fed.Cl. at 743; *Nutratech, Inc.*, 242 F.R.D. at 556; *Netquote, Inc.*, 2007 WL 2438947 at *4.

In weighing the evidence and arguments regarding this category of materials, the Court notes that neither Defendant has argued they will suffer prejudice if Murray or CTO van Haaren are prevented from directly reviewing materials concerning the costs of developing CogTax or materials regarding unrelated projects or customers.  The Court also notes that an AEO-Murray designation would ensure Murray's access to all materials reasonably accessible to him during his employment, those pertaining to information he would reasonably have known, and those

specifically discussing him.  Finally, the Court notes Plaintiff will be required to produce both an AEO log and redacted copies of the relevant documents to Murray, as discussed above, to aid in his review of the materials and strictly limit the information that is not available for his review.

In this context, the Court finds Plaintiff has adequately demonstrated its need for AEO protection for documents concerning the costs of developing the CogTax software, especially those containing other protected internal information regarding specific customers, other projects, and development planning for CogTax.  Plaintiff is cautioned that the redacted documents provided to *pro se* defendant Murray must be carefully redacted as discussed above.

### III.  Conclusion

For the reasons set forth above, the Court finds that Plaintiff Deloitte Tax has appropriately demonstrated that its need to protect certain sensitive information from abuse by competitors outweighs the prejudice Defendants assert they will suffer if the Court enters a protective order permitting the use of an AEO designation as discussed above.   Accordingly, the Court makes the following ORDERS:

No later than May 11, 2022, Murray and Deloitte Tax shall meet and confer to: (1) agree on a definition for AEO-Murray designated materials, consistent with this Order and prior discussions with the Court as set forth herein; and (2) agree on terms for providing Murray with an AEO log and redacted copies of all AEO-designated materials, consistent with this Order.

No later than May 16, 2022, the parties shall submit a joint proposed stipulated protective order consistent with this Order and conforming generally to the proposed protective order previously submitted by Plaintiff, which incorporates "Attorneys Eyes Only (AEO)," "Attorney Eyes Only – Murray (AEO-Murray)," and "Confidential – Subject to Protective Order" provisions.  The proposed protective order shall contain clear and reasonable procedures

governing the production of an AEO log and redacted AEO documents to unrepresented parties, and shall also contain clear and reasonable procedures for a party to challenge or seek to de-designate materials as AEO or AEO-Murray.  The parties may include additional procedures similar to those set forth in ECF Doc. 44-3 pp. 13-16, ¶ 20 for the handling and production of source code.

The parties are advised that a protective order is not a blanket order to file documents under seal.  Thus, the proposed protective order shall clearly provide that no document or other material may be filed under seal without first conferring with the producing party and seeking leave of court.  The parties are also reminded that nothing in this Order or any subsequent protective order limits the Court's power to enter any order that may be appropriate regarding the use or disclosure of materials produced or used in discovery or at trial.  Upon filing the proposed protective order, Plaintiff's counsel shall email a Word version of the proposed protective order to the Chambers of Magistrate Judge Knapp (Knapp_Chambers@ohnd.uscourts.gov), which may be modified by the Court as deemed necessary.

Nothing in this Order shall be construed as a ruling as to the scope of discovery or a determination that certain material or information is discoverable or admissible in this action. The parties shall tailor their discovery in this case to the specific claims and defenses raised.  To that end, the parties are reminded that discovery must be "relevant to [a] party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (emphasis added). Furthermore, counsel and the parties are expected to work diligently and cooperatively to resolve discovery matters without the need for repeated court intervention.

Dated: May 4, 2022

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge

23